IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

TRACYE ANNETTE ROSE                                                PLAINTIFF

V.                         CASE NO.: 3:12CV00118-BD

CAROLYN W. COLVIN,[1] Acting Commissioner,
Social Security Administration                                      DEFENDANT


ORDER AFFIRMING THE COMMISSIONER

Tracye Annette Rose seeks judicial review of the denial of her application for

disability insurance benefits alleging disability beginning January 4, 2008.  (Tr. 130)  She

was 48 at the time of her hearing before the Administrative Law Judge ("ALJ").

Ms. Rose was a high school graduate who had taken one semester of college.  (Tr.

47)  She lived with her husband and teenage son.  (Tr. 48)  She was last employed as a

forklift driver but maintains that she cannot work full-time due to fibromyalgia, anxiety

and depression, hypertension, folliculitis, and osteoarthritis.  (Tr. 50-52, 57)

**The Commissioner's Decision**

After considering Ms. Rose's application, the Commissioner's ALJ determined

that Ms. Rose had severe impairments — hypertension (stable and amenable to medical

control), osteoarthritis and fibromyalgia, with a diagnostic history of folliculitis (stable

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of
Social Security.  She is therefore substituted for Michael J. Astrue pursuant to
Fed.R.Civ.P. 25(d).

and amenable to medical control) — but that she had the residual functional capacity

("RFC") to do light work with a sit-stand option throughout the day.  (Tr. 13, 16)

Because a vocational expert identified jobs a person with Ms. Rose's RFC could do, the

ALJ concluded that Ms. Rose was not disabled under the Social Security Act and denied

the application.[2]  (Tr. 23)

　　　　After the Commissioner's Appeals Council denied a request for review, the ALJ's

decision became a final decision for judicial review.  (Tr. 1-3)  Ms. Rose filed this case to

challenge the decision.  In reviewing the decision, the court must determine whether

substantial evidence supports the decision and whether the ALJ made a legal error.[3]

### Listed Impairment

　　　　A claimant has the burden of proving that an impairment or combination of

impairments meets or equals a Listing.  *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th

Cir. 2004).  "To meet a listing, an impairment must meet all of the listing's specified

---

[2]The vocational expert testified that a person with Ms. Rose's RFC could perform
the jobs of small products assembler and maker-on-line.  (Tr. 23, 60)

[3]*See* 42 U.S.C. § 405(g) (requiring district court to determine whether
Commissioner's findings are supported by substantial evidence and whether
Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923,
925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of
benefits is limited to whether the decision is 'supported by substantial evidence in the
record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold
the Commissioner's decision to deny an applicant disability benefits if the decision is not
based on legal error and if there is substantial evidence in the record as a whole to support
the conclusion that the claimant was not disabled.").

criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing references omitted).

Ms. Rose argues that she met the requirements of listing "1.02(B)(d)" due to her "fibromyalgia which interferes with her ability to ambulate effectively." (#10, pp. 9) Neither in her brief nor anywhere in the entire record, however, is there any support for this claim.

First, there is no listing "1.02(B)(d)" in appendix 1 to subpart P of 20 C.F.R. §404.1501. See 20 C.F.R. PT. 404, subpt. P, app. 1. The portion of the regulations quoted in Ms. Rose's brief comes from paragraph 1.00(B), which is the preamble portion of the listings regarding musculoskeletal disorders. See 20 C.F.R. PT. 404, subpt. P, app. 1, Listing 1.00B.

For Ms. Rose to meet a listing 1.02 for major dysfunction of a joint, she would have to establish either an inability to ambulate or an inability to perform fine and gross movements effectively. 20 C.F.R. PT. 404, subpt. P, app. 1, Listing 1.020B. Listing 1.00(B)(2)(c) defines inability to perform fine and gross movements as an extreme loss of function of both upper extremities that interferes with the ability to independently initiate, sustain or complete activities. Using upper extremities effectively is evidenced by functions such as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. *Id*. Listing 1.00(B)(2)(d) defines ineffective ambulation as "having insufficient lower extremity functioning to permit independent ambulation

without the use of a hand-held assistive device that limits the functioning of both upper extremities."

Ms. Rose points to no medical evidence to support her claim that she was unable to use her upper extremities or ambulate effectively.  (#10 at pp. 10-11)  To the contrary, she reported being able to drive, do dishes, straighten beds, do laundry, and sew on most days. (Tr. 152-156)  She also testified that she walked a half mile a day and that her rheumatologist had advised her to exercise.  (Tr. 54)  Rick Byrd, in a 2008 functional capacity evaluation, found that Ms. Rose could sit and stand two hours at a time for a total of six hours per day and that she could walk for one hour at a time for a total of four hours per day.  (Tr. 229)  He found she could frequently lift ten pounds and occasionally lift up to twenty pounds; occasionally bend, kneel, and crouch; frequently drive and reach above her shoulder; had no restriction in her ability to reach at desk level or below, reach, or handle.  (Tr. 229-30)

Further, in a medical source statement, Ms. Rose's treating rheumatologist, Randy Roberts, M.D., wrote that Ms. Rose could stand and walk four hours in an eight-hour work day and had no limitations on her ability to reach, finger, and handle for one-third of an eight-hour day.  Ms. Rose did not carry her burden of proving that she met a listed impairment.

4

**Credibility**

Ms. Rose also objects to the ALJ's evaluation of her credibility.  In her

application, Ms. Rose alleged that disabling pain prevented her from working.  In her

brief, she argues that her treating physicians documented her complaints of chronic pain,

fatigue, depression and anxiety related to her fibromyalgia and that the ALJ, therefore,

should have believed her description of disabling pain.  (#10 at p. 12)

An ALJ has a duty to evaluate the claimant's credibility.  *Nelson v. Sullivan*, 966

F.2d 363, 366 (8th Cir. 1992).  In evaluating Ms. Rose's credibility, the ALJ followed the

required two-step process and considered the required factors.[4]  See *Pol'y Interpretation*

*Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the*

*Credibility of an Individual's Statements*, SSR 96-7p.  Thus, the question before the court

is whether substantial evidence supports the ALJ's credibility evaluation.

"The ALJ may discount complaints of pain if they are inconsistent with the

evidence as a whole."  *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).  *Ostronski*

*v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) ("An ALJ may discount a claimant's

---

[4]In considering the credibility a claimant's subjective complaints, an ALJ must
consider: (1) the claimant's prior work record; (2) observations by third parties and
treating and examining physicians relating to such matters as: (a) the claimant's daily
activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and
aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e)
functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  *See* SSR
96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability
Claims: Assessing the Credibility of an Individual's Statements*.

subjective complaints of pain only if there are inconsistencies in the record as a whole."). Here, the ALJ determined that the medical findings and Ms. Rose's active lifestyle were inconsistent with disabling pain.  (Tr. 19)  Substantial evidence supports that determination because treating physicians identified no cause for disabling pain.

Ms. Rose's hypertension and folliculitis are controlled by medication.  (Tr. 328, 334, 336, 340, 344, 367-68, 421, 426)  See *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (citation omitted) (an impairment that can be controlled by treatment or medication cannot be considered disabling).

In March, 2008, Ms. Rose complained of pain all over her body.  Her primary care physician, Judy Ash, M.D., ordered blood work and x-rays of Ms. Rose's knees, shoulders, chest, and cervical spine– the results of which were all normal.  (Tr. 217-225) Additionally, results from Ms. Rose's whole-body bone scan (Tr. 219), thyroid scan (Tr. 254), voiding cystogram, kidney ultrasound, and renal ultrasound were also normal.  (Tr. 251-52)

In May, 2008, Ms. Rose complained of bilateral shoulder pain and fatigue.  (Tr. 201)  Dr. Ash diagnosed fibromyalgia.  (Tr. 200-202)  Dr. Ash treated her conservatively with Mobic and Zanaflex.  (Tr. 200-202)

Rick Byrd, M.Ed., performed a functional capacity evaluation of Ms. Rose in October, 2008.  He determined that she could sit and stand for two hours at a time for a total of six hours per day and could walk for one hour at a time for a total of four hours

6

per day.  (Tr. 229)  He found she could frequently lift ten pounds and occasionally lift up to forty pounds; occasionally bend, kneel, and crouch; frequently drive and reach above her shoulder; has no restriction in her ability to reach at desk level or below the waist.  (Tr. 229)  He diagnosed myalgia and joint pain.  (Tr. 228)  He concluded that she could work within the medium physical demand level according to guidelines established by the Department of Labor.  (Tr. 231)

In April of 2009, Ms. Rose reported to her rheumatologist, Dr. Roberts, complaining of back pain.  On examination, Ms. Rose had tenderness in the paralumbar muscle and trochanteric bursae, but she had full range of motion in the back and hips and full flexion and extension in the knees without discomfort, and no instability.  (Tr. 361-62)  Dr. Roberts diagnosed back pain, typical for fibromyalgia; trochanteric bursitis; a rash of unknown etiology; and sicca syndrome.  (Tr. 362)  He encouraged regular exercise.  (Tr. 362)

At a September 2009 follow-up appointment for her fibromyalgia, Ms. Rose stated that she had been doing better until she ran out of one of her medications.  (Tr. 371)  In notes from a follow-up appointment in January, 2011, Dr. Roberts wrote that he agreed her job was probably "too strenuous with her chronic problems."  (Tr. 415)  Yet on the medical source statement form he completed, he wrote that she could occasionally carry ten pounds and frequently carry less than ten pounds, could stand and walk four hours in an eight-hour day and sit unlimitedly, but that she would need to be able to change

positions frequently.  He wrote that she should have limited exposure to extreme cold, and further noted that he did not anticipate that she would ever be absent from work due to her impairments or that side effects from her medication would affect her ability to work.  (Tr. 416)

While Ms. Rose was unable to perform her past work as a forklift driver, the record as a whole is consistent with the ability to work.  As the ALJ pointed out, Ms. Rose reported activities of daily living which were inconsistent with her reports of disabling pain.  (Tr. 22)  Ms. Rose testified that she was able to wash dishes and clothes, straighten the beds, and walk a half mile a day.  (Tr. 54)  She reported that she was also able to drive, shop, and sew on most days.  (Tr. 152, 154, 155)  She attended church and family gatherings.  (Tr. 156)  The ALJ had a sufficient basis for discounting her allegation of disabling pain.

**RFC**

Ms. Rose claimed she could not do light work on a full-time basis because she could not stand or walk for a sufficient time.  (#10 at p. 13)  She also maintained that pain prevented her from doing light work.  (#10 at p. 15)

After evaluating a claimant's credibility, the ALJ must determine the claimant's RFC; but the claimant bears the burden of demonstrating RFC and proving disability. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence

of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

The ALJ placed great weight on Ms. Rose's treatment records in determining RFC. (Tr. 21-22)  As set forth above, the treatment records provided no basis to conclude she suffered disabling pain.  Radiologic imaging was normal.  (Tr. 217-225, 251-52, 254) Laboratory results were negative.  (Tr. 275-286)  Ms. Rose's hypertension, folliculitis, depression, and anxiety improved with treatment.  (Tr. 328, 334, 336, 340, 344, 367-68, 371, 421, 426)  And treating physicians treated her impairments conservatively, prescribing only occasional pain medications.  (Tr. 328, 334, 340-45)  Substantial evidence showed that Ms. Rose could lift, stand, sit and walk sufficiently to perform light work with a sit/stand option.  (Tr. 229-30, 416)

**Conclusion**

Substantial evidence supports the ALJ's decision denying Ms. Rose's application. The ALJ made no legal error.  For these reasons, the court DENIES the request for relief (docket entry # 2) and AFFIRMS the decision denying the application.

It is so ordered this 8th day of July, 2013.

UNITED STATES MAGISTRATE JUDGE